National Malted Food Corporation, Appellee, v. William J. Crawford and Donald L. Beezley, Trading as Fey Hotel Operating Company, Appellants.

Gen. No. 8,074.

Opinion filed September 24, 1929.

HERBERT T. LANDAUER and EDWARD P. ALLEN, for appellants.

IRA J. COVEY, E. L. COVEY and CHAS. WESNER, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

National Malted Food Corporation, appellee, instituted a suit in replevin in the county court of Peoria county, against William J. Crawford and Donald L. Beezley, partners doing business as Fey Hotel Operating Company, appellants, to recover possession of a quantity of malted products. Appellee filed its declaration against the appellants, which declaration contained the usual averments in replevin and also a count in trover, charging conversion of the property mentioned in the declaration, and praying a judgment against appellants for the value of the property.

It appears that one L. E. Boulware was traveling salesman for appellee, National Malted Food Corporation of Chicago, and took to appellants' hotel in Peoria samples of various kinds of malted milk which he was selling for appellee. He registered at the Fey Hotel, which is operated by appellants. He brought with him the products in question and on, or about, November 11, 1927, he left the hotel owing $61.65, for board and accommodations. Appellants detained his goods, claiming a lien thereon, and afterwards gave notice and sold them to satisfy such lien. These facts are set up by appropriate counts of the declaration and other pleadings. The amended replications filed by appellee, denying ownership of the property by Boulware, averred ownership in itself, and that appellants had

knowledge of such ownership at the time the products were brought to the hotel.

Appellants interposed a demurrer to the amended replications, which was overruled, whereupon appellants elected to stand by their demurrer, and judgment was entered against them for $200, and this appeal followed.

There is but one question involved in this proceeding, and that is, whether or not an innkeeper is entitled to a lien upon luggage and property brought into the hotel by a guest, without regard to the question of ownership. A great number of authorities have been cited by counsel for the respective parties, and there seems to be but little, if any, chance to reconcile them.

Section 2 of chapter 71, Smith-Hurd Rev. St., Cahill's St. ch. 71, ¶ 2, being an act for the protection of innkeepers, provides: "Every hotel proprietor shall have a lien upon all the baggage and effects brought into said hotel by his guests, for any and all proper charges due him from such guests for hotel accommodations, and said hotel proprietor shall have the right to detain such baggage and effects until the amount of such charges shall have been fully paid, and unless such charges shall have been paid within sixty days from the time when the same accrued, said hotel proprietor shall have the right to sell such baggage and effects at public auction, after giving ten days' notice, of the time and place of such sale."

Paragraph 57 of chapter 82 of Smith-Hurd Rev. St., the Lien Act rights, Cahill's St. ch. 82, ¶ 41, reads as follows: "Hotel, inn and boarding-house keepers shall have a lien upon the baggage and other valuables of their guests or boarders brought into such hotel, inn or boarding-house by such guests or boarders, for the proper charges due from such guests or boarders for their accommodations, board and lodgings, and such extras as are furnished at their request."

It will be noted that by section 57 of the Lien Act, a lien is given only on the "baggage and other valuables of their guests" while section 2 of the Innkeeper's Act, the lien is on "all the baggage and effects brought into said hotel by his guests." It is very evident from section 2 of the Innkeeper's Act, that the legislature intended to give a lien on all the property brought by the guests into the hotel, even though the innkeeper has notice that such property belongs to another.

Under the common-law rule the authorities universally hold that the lien of the innkeeper is coextensive with his liability.

In the first and second special pleas to appellee's declaration, it is averred that L. E. Boulware, the guest, brought certain mentioned property and effects into the said Hotel Fey "and then and there, the said Boulware, as such guest, requested the appellants, as such innkeepers, to place the property in a safe place and to care for the same." Under these conditions, appellants, as such innkeepers, became liable, as insurers, under the common-law rule for the safety of the property intrusted to the innkeeper.

The common-law rule in England and its ancient origin is stated in *Robins v. Gray* (1895), L. R. 2 Q. B. Div. 501, as follows: "I have no doubt about this case. I protest against being asked, upon some new discovery as to the law of innkeeper's lien, to disturb a well-known and very large business carried on in this country for centuries. The duties, liabilities and rights of innkeepers with respect to goods brought to inns by guests are founded, not upon bailment, or pledge, or contract, but upon the custom of the realm with regard to innkeepers. Their rights and liabilities are dependent upon that, and that alone; they do not come under any other head of law. What is the liability of an innkeeper in this respect? If a traveler comes to an inn with goods which are his luggage—I do not say

his personal luggage, but his luggage—the innkeeper by the law of the land is bound to take him and his luggage in. The innkeeper cannot discriminate and say that he will take in the traveler but not his luggage. If the traveler brought something exceptional which is not luggage—such as a tiger or a package of dynamite —the innkeeper might refuse to take it in; but the custom of the realm is that unless there is some reason to the contrary in the exceptional character of the things brought, he must take in the traveler and his goods. He has not to inquire whether the goods are the property of the person who brings them or some other person. If he does so inquire, the traveler may refuse to tell him, and may say, 'What business is that of yours? I bring the goods here as my luggage and I insist upon your taking them in,' or he may say: 'They are not my property, but I bring them here as my luggage and I insist upon your taking them in.' . . . Then the innkeeper's liability is not that of a bailee or pledgee of goods; he is bound to keep them safely. It signifies not, so far as that obligation is concerned, if they are stolen by burglars, or by servants of the inn, or by another guest, he is liable for not keeping them safely unless they are lost by the fault of the traveler himself. That is a tremendous liability; it is a liability fixed upon the innkeeper by the fact that he has taken the goods in, and by law he has a lien upon them for the expense of keeping them as well as for the cost of the food and entertainment of the traveler. By law that lien can be enforced, not only as against the person who has brought the goods into the inn, but against the real and true owner of them. That has been the law for two or three hundred years, but to-day some expressions used by judges, and some questions (immaterial, as it seems to me) which have been left to juries, are relied on to establish that if the innkeeper knows that the goods are not the goods of the person

who brings them to the inn, he may refuse to take them in; or, if he does take them in, he has no lien upon them. . . . Now, is there any decided case in which it has been held that, although goods have been brought to an inn as the luggage of the traveler and received as such by the innkeeper, he has no lien upon them if he knows that they are not the goods of the traveler? There is not one such case to be found in the books. . . . If we were to accede to the argument for the appellants, we should be making a new law, and our decision would produce in very many cases great confusion and hardship. I am of opinion that an innkeeper is bound to take in goods with which a person who comes to the inn is traveling as his goods, unless they are of an exceptional character; that the innkeeper's lien attaches, and that the question of whose property the goods are, or of the innkeeper's knowledge as to whose property they are, is immaterial."

The writers in encyclopedias and textbooks with singular unanimity have asserted that an innkeeper has a lien at common law upon all goods in the rightful possession of his guests for the value of the guests' entertainment. The American and English Encyclopedia of Law (2nd Ed., vol. 16, p. 548) says: "Corresponding to the extraordinary liabilities which the law imposes on innkeepers is the extraordinary privilege of a lien on the effects of guests for the amount of the reasonable charges for the guests' entertainment. . . . It is essential to the existence of the lien that the goods, on which it is claimed, should have been brought to the inn by a person coming in the character of a guest, but it is not essential that the guest should, in all cases, be the owner of the goods."

The Encyclopedia of Law and Procedure (vol. 22, p. 1090) says: "Where a guest brings to an inn, goods ostensibly his, the lien of the innkeeper attaches to the goods, although they were, in fact, the goods of a third person."

In Wait's Law and Practice (5th Ed., vol. 1, p. 655) it is said: "The law gives to any innkeeper a, lien, whether the goods are the property of the traveler or the property of third parties from whom it has been hired, or even fraudulently taken or stolen, if the innkeeper has no notice of the wrong, and acts honestly."

In Parsons on Contracts (7th Ed., vol. 2, p. 156) it is said: "An innkeeper has a lien on the property of the guest (not on his person) for the price of his entertainment even if he be an infant and he has this lien on goods, brought to him by a guest, although they belong to another person."

In Overton on the Law of Liens (sec. 123, p. 150) it is said: "If property, goods, horses or the like, are brought by a guest to an inn at which he obtains accommodations and leaves the property in custody of the innkeeper, it seems the lien will attach thereto, whether it belonged to a guest or to a third person for whom the guest is bailee, or indeed even if it had been stolen by the guest. For the innkeeper is but to receive and entertain the guest, and when unaccompanied by any suspicions, would not be justified in inquiring into the title to the property delivered by the guest to his possession. Possession is prima facie evidence of ownership."

In Edwards on the Law of Bailments (3rd Ed., sec. 474, p. 363) it is said: "The relation of innkeeper and guest being established, the lien covers the goods, baggage and property of the guest and all such things as the guest brings with him; it extends to whatever the guest brings and the innkeeper receives; it is not limited to property of the guest or to things of material or intrinsic value. . . . The innkeeper is bound to receive the guest and cannot stop to investigate his title to the property he brings with him, and it may be added, he is also liable for the safe keeping of the goods, though they may be the property of a third person."

In Jones on Liens (2nd Ed., sec. 499, p. 303, vol. 1) it is said: "Thus it has become the settled law with reference to this lien, that there is no distinction between the goods of a guest, and those of a third person brought by a guest, and in good faith received by the innkeeper as the property of the guest. The innkeeper cannot investigate the title of property brought by his guest, and is bound, unless there is something to excite suspicion, to receive, not only his guest, but his horse or other property brought by him as belonging to him, because it is in his possession."

And in section 501, p. 304, it is further said: "It is now settled, however, that the lien is not limited to such things as a guest ordinarily takes with him. An innkeeper who receives a piano in his character as innkeeper, believing it to be the property of his guest, is entitled to a lien upon it for his guest's board and lodging, although in fact, the piano is the property of another person who had consigned it to the guest to sell on commission."

In Schouler on Bailments and Carriers (3rd Ed., sec. 326, p. 327) it is said: "The law grants him (the innkeeper) as security for unpaid charges a lien upon all movable property which the guest may have brought with him to the house and placed in the regular custody of the innkeeper as bailee. Even where the thing belonged to a third person and the guest himself had only a bailee's right therein, or was an agent for the owner, the innkeeper's lien will attach, provided only he received the property on the faith of the innkeeping relation. And the innkeeper's knowledge that the guest did not own the goods does not affect the case unless he knew that the possession was wrongful. . . . An innkeeper's rightful lien ought fairly to be co-extensive with his liability for all such property of other persons."

In Story on Bailments (9th Ed., sec. 476, p. 446) it is said: "It has been said that the horse of a guest

can be detained only for his own meals and not for the meals and expenses of the guest. The reason is said to be, that chattels are in the custody of the law for the debt which arises from the thing itself, and not for any other debt due from the same party, for the law is open to all such debts and doth not admit private persons to make reprisal. This may be correct as to all debts than the debts contracted by the party as a guest, but there seems reason to doubt, whether the lien of the innkeeper does not extend to all the goods which a guest has at an inn for all his expenses there. The general rule seems in favor of such a lien, whether any expense has been incurred on the particular goods or not. The cases cited to support the opposite doctrine do not seem to justify it.''

In Wharton's Law of Innkeepers (page 118) it is said: ''The innkeeper has, therefore, a lien upon all goods brought by a guest. . . . He is not bound to inquire whether his guest is the owner of goods he brings with him to the inn, but only whether he comes as a guest, but he is bound to receive the goods, whatever their nature, provided he has sufficient accommodations, and has, therefore, a lien upon such goods which cannot be defeated even by the true owner.''

In *Waters & Co. v. Gerard,* 189 N. Y. 302, the court in discussing the extent of innkeeper's lien among other things said: ''Unless the innkeeper's lien extends to all luggage and goods which the guest brings to the inn, and for which the innkeeper becomes responsible as an insurer, an opportunity is afforded by which great fraud may be perpetrated upon the innkeeper, through a relative or other person claiming the ownership of the luggage and goods in the possession of the guest. So long as public policy requires that an innkeeper be held to the extraordinary and severe responsibility prescribed by the common law, the same considerations of public policy require that the rule of common law be retained in its entirety and

that the innkeeper have a lien upon the luggage and goods in the possession of the guest for payment of his reasonable charges. All property is held subject to such general regulations as are necessary to the common good and the public welfare.''

In *Eden v. Drey,* 75 Ill. App. 102–105–106, the court announces the following rule in relation to the liability of an innkeeper: "The loss of the goods of a guest, while at an inn, is presumptive evidence of negligence on the part of the innkeeper. . . . And in case of such loss 'the innkeeper can alone absolve himself from liability by showing that the loss . . . occurred without any fault whatever on his part, or by the fault of the guest.' ''

The responsibility of an innkeeper is not necessarily limited to such baggage as is carried for the convenience of travel, but extends as well, to merchandise carried by a guest when received by the innkeeper. *Eden v. Drey, supra.*

In *Baldwin Co. v. Keeley,* 198 Ill. App. 287, the court construed the Innkeeper's Act (Cahill's St. ch. 71, ¶ 2; section 2, ch. 71, Smith-Hurd St.) providing for a lien upon all "baggage" and "other valuables" and "effects" brought into a hotel by a guest to include a player piano.

In *Baldwin Piano Co. v. Congress Hotel,* 243 Ill. App. 118, the court sustained a lien of an innkeeper by virtue of (Cahill's St. ch. 71, ¶ 2; section 2, ch. 71, Smith-Hurd St.) holding a lien, where the relation of innkeeper and guest existed, to be superior to the rights of the company from whom the piano was bought, holding an unrecorded and unacknowledged mortgage upon it.

*Brown Shoe Co. v. Hunt,* 103 Iowa 586, 39 L. R. A. 291–292, was an action in replevin, which the Brown Shoe Company, a Missouri corporation, instituted against Frank Hunt of Sioux City, Iowa, who was the

proprietor of the New Oxford Hotel in said city. It appears that a man by the name of Sheehan was a traveling salesman for the Brown Shoe Company, and applied for, and was furnished, accommodations in said hotel, such accommodations being at the value of $68.60, which remained due and unpaid at the time the said Sheehan left the hotel. The goods and chattels that he brought there as a guest remained at the hotel and were taken under the writ of replevin, sued out by Brown Shoe Company. The goods and chattels claimed under a lien were at all times the property of the Brown Shoe Company and were the property of the Brown Shoe Company at the time the manager of the hotel took possession of them. The plaintiff's ownership of the goods, upon which defendant claimed a lien, was well known to the defendant, the proprietor of the hotel, to be in the plaintiff.

The cause was tried and judgment entered in favor of the proprietor of the hotel for the amount due for accommodations furnished Sheehan.

The Iowa statute provides: ''All hotel, inn or eating-house keepers shall have a lien upon, and may take and retain possession of, all baggage and other property belonging to, or under the control of, their guests, which may be in such hotel, inn, or eating-house, for the value of their accommodations and keep, and for all money paid for, or advanced to, and for such extras and other things as shall be furnished such guests, and such property so retained shall not be exempt from attachment or execution to the amount of the proper and reasonable charges of such hotel, inn, or eating-house keeper, against such guests, and costs of enforcing the lien thereon.''

In its decision, the court among other things said: ''It appears from the statement of facts that defendant knew that the goods upon which he claims a lien did not belong to his guest, but were the property of

the plaintiff. It is therefore contended that his inn-keeper's lien did not attach to them. Counsel cite several cases in support of such contention. . . . Under our statute, the innkeeper may 'take and retain possession of all baggage and other property belonging to, or under the control of, their guests, which may be in such hotel or inn.'

"Clearly, the legislature intended by the words used to give a lien, not only upon the property in fact belonging to the guest and which was in the hotel or inn, but likewise a lien upon property placed therein which was under the guest's control. The guest in this instance was a traveling man, selling goods by sample, and the lien is claimed upon these sample goods and the receptacles in which they were contained. These goods were used in the prosecution of his business as a salesman. The nature and character of his occupation were such that plaintiff must be held to know he would be compelled to stop at hotels or inns, and that, in the proper prosecution of his avocation, he would need his sample goods in such hotels or inns. The statute clearly covers such goods as they were, under the control of the guest."

We are not unmindful of the holdings of the different courts of the country upon the question here involved. It will be found, however, that the holdings as contended for by appellee are based upon the wording of the statute involved in the particular case. We are inclined to commit ourselves to the doctrine, that an innkeeper has a lien on the property brought in by a guest, whether the guest is the owner of it or not. This holding seems to be consistent with good reasoning, common honesty and fair dealing. The greater class of hotel guests are traveling salesmen. Most of them go into a hotel with grips and trunks which the hotel keeper must know, from experience, belonged to the salesman's employer. He has little with him of his

own personal property, except, possibly, wearing apparel.

It is commonly known and understood that samples do not belong to the salesman but belong to the house which he represents. It is therefore necessary, in the very conduct of his master's business, that he patronize hotels. Then is it reasonable to say, that the lien extends only to the few personal effects which the salesman owns, and not to the trunks and samples which his employer has committed to his possession and care. If his samples are not subject to the lien then the salesman might stay a considerable length of time at a hotel, incur a substantial bill, and then walk out without fear of having his baggage molested. He would be in a position to say to the innkeeper "you have furnished me accommodations but my baggage belongs to my master." Any other rule than the one we have announced opens the gate to one who is so constituted to practice fraud upon an innkeeper.

It is suggested by appellee that to put the construction upon the Innkeeper's Act as contended for by appellants would deprive appellee of its property without due process of law.

The samples furnished Boulware, as a salesman, were placed in his hands, and the possession thereof delivered to him, for the purpose of selling the goods and wares of the appellee. The salesman was the agent and representative of appellee. Appellee knew from the very nature and character of the business in which its salesman was engaged, that it would be necessary for him to stop at hotels and obtain lodging and take his samples with him. The innkeeper, to whom he applied for accommodations, became in effect an insurer of his luggage against all loss and damage not occasioned by the act of God, the public enemy, or neglect of the guest himself. It is only reasonable to say that

the lien of the innkeeper should be coextensive with his liability.

Section 2 of chapter 71 of said Innkeeper's Act, Cahill's St. ch. 71, ¶ 2, was evidently enacted with the view of covering just such a case as arises out of the fact in this proceeding. The conclusion reached does not do violence to the statute in question.

Furthermore, a statute purporting to give innkeepers a lien on the goods of their guests cannot be held unconstitutional when such statute does not extend beyond the rule established by the common law nor beyond the requirements of public policy. *Waters & Co. v. Gerard,* 189 N. Y. 302, 121 Am. St. Rep. 886.

We conclude, therefore, that the action of the court in overruling the demurrer to the amended replications was erroneous and that the judgment of the county court of Peoria county should be reversed and the cause remanded, which is accordingly done.

*Reversed and remanded.*