**Lawrence COLLINS, Plaintiff,**

v.

**The VICEROY HOTEL CORPORATION, an Illinois Corporation, et al., Defendants.**

**No. 71 C 112.**

United States District Court,
N. D. Illinois, E. D.

Feb. 2, 1972.

Seymour J. Mansfield, Donald J. Kerwin, Legal Aid Bureau, Chicago, Ill., for plaintiff.

Frank Friedman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NAPOLI, District Judge.

This is an action for declaratory judgment, injunctive relief and damages for the alleged violation of plaintiff's civil rights brought under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, with jurisdiction allegedly founded on 28 U.S.C. §§ 1331, 1343(3), 2201 and 2202.

The case is now before the Court on the plaintiff's motion for judgment on the pleadings as to Count I, or, in the alternative, for partial summary judgment declaring the Illinois Innkeepers' Lien Laws, Ill.Rev.Stat., 1969, Ch. 71, § 2 and Ch. 82, § 57, unconstitutional and permanently enjoining their enforcement by the defendants.

The Court finds that there is no genuine issue of material fact in this case with regard to Count I of the complaint.

The uncontested facts are as follows. The plaintiff, Lawrence Collins, was a guest of the defendant Viceroy Hotel under an oral rental agreement from late December, 1968 until December 29, 1970, when he was locked out of his room. During that time, the agreed rental rate was $3.61 per day, payable on a weekly basis and in advance. On December 11, 1970, the plaintiff paid rent for a period up to and including December 21, 1970.

On the morning of December 29, 1970, the plaintiff left his room, allegedly to keep an appointment for a physical examination at the Cook County Department of Public Aid clinic. When he returned later in the day, the plaintiff found that the lock on his door had been "plugged" in such a way as to not admit his door key. Upon inquiry he was told by a hotel clerk that the "plug" would not be removed. At this time, his room still contained his personal property.[1]

In their answer, the defendants admit that the plaintiff was not allowed to re-enter his room,[2] and that possession of his personal property was held under and by virtue of the provisions of the Illinois Innkeepers' Lien Laws, Illinois Revised Statutes, 1969, Ch. 71, § 2 and Ch. 82, § 57. On January 15, 1971, the plaintiff brought this action and moved for a temporary restraining order or preliminary injunction, which motion was heard and denied. On appeal, the Court of Appeals for the Seventh Circuit, on February 12, 1971, enjoined the defendants from disposing of the plaintiff's property and ordered that the plaintiff, upon posting of bond not in excess of nine days rental, be allowed to re-enter his room and remove his property. By agreement of the parties and without the posting of bond, the plaintiff's property was returned to him on March 4, 1971.

## MOOTNESS

■ There is some suggestion from paragraph 20 of their answer that the defendants consider the case mooted by the return of the property to the plaintiff. In Powell v. McCormack, 395 U.S.

---

1. The personal property allegedly includes the following: 2 pair trousers, 3 overcoats, 1 raincoat, 3 suits, 2 sportcoats, 1 sweater, 2 hats, 2 pair boots, 3 pair slippers, 1 blanket, 10 sportshirts, 15 dress shirts, 1 Magnavox television set, 1 transistor radio, ties, socks, handkerchiefs, household linens, assorted food, cooking utensils, jewelry, a Masonic Lodge lapel pin, a gold wrist watch, miscellaneous personal papers, and medicine (nitroglycerin tablets, benzocaine, and hydrocortizone).

2. In their response to plaintiff's motion, the defendants' have filed the affidavit of defendant M. Ligon, the manageress of the Viceroy Hotel. In her affidavit she contends that since the plaintiff's rent had remained unpaid for eight days, he was denied access to his room on December 29, 1970. Later that day he allegedly returned to the hotel and asked the affiant for the medicine that was locked in his room. He was allegedly permitted to take the medicine and at that time he allegedly requested the affiant to hold his property for him until January 6, 1971.

Although there is a question as to whether plaintiff did ask the manageress on December 29, 1970, to hold his property, it could only have been *after* the defendants had asserted their authority under the Illinois Innkeepers' Lien Laws by plugging the door of the plaintiff's room.

In paragraph 11, 16 and 17 of their answer, the defendants admit that plaintiff's property was seized and held by virtue of the challenged lien laws. They further admit, in paragraph 12 of their answer, that a written demand for possession was received by defendant Ligon by certified mail on January 5, 1971 and in paragraph 13, that the attorney for defendants received further demands for the return of the property on January 8, 1971. At that time, he informed plaintiff's counsel that the defendant Viceroy Hotel was invoking its rights under the Illinois Innkeepers' Lien Laws and would not relinquish the property until the plaintiff had paid the rent which he allegedly owed.

Although this might raise a question as to damages under Count II of the complaint, it does not raise a genuine issue as to any material fact as to Count I of the complaint and therefore, it would not bar the summary judgment here requested.

486, 496–497, 89 S.Ct. 1944, 1951, 23 L. Ed.2d 491 (1969), however, the Supreme Court stated that:

> Simply stated, a case is moot when the issues presented are no longer "live" or the parties lack legally cognizable interest in the outcome. See E. Borchard, Declaratory Judgments 35–37 (2d ed. 1941). Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy. See United Public Workers v. Mitchell, 330 U.S. 75, 86–94 [67 S.Ct. 556, 562, 566, 91 L.Ed. 754] (1947): 6A J. Moore, Federal Practice ¶ 57.13 (2d ed. 1966).

In the instant case, the plaintiff in Count II of his complaint is seeking damages for deprivation of the property for the period it was held and this is a "remaining live issue." Furthermore, as the court stated in Klim v. Jones, 315 F.Supp. 109, 117 (N.D.Cal.1970), a case on all fours with the instant case:

> Since any such recovery [damages] depends in part upon a determination by this court that the defendants acted pursuant to an unconstitutional statute, this action is not rendered moot by the return of the plaintiff's belongings.

Since plaintiff's claim for damages in Count II, as in *Klim*, is dependent on the resolution of his claim in Count I, the constitutional challenge to the Illinois Innkeepers' Lien Laws is a live issue which satisfied the constitutional requirement of a case or controversy. Count I has not, therefore, been rendered moot by the return of the plaintiff's property.

## JURISDICTION

One of the basis for this action is alleged to be the Civil Rights Act of 1871,

42 U.S.C. § 1983, with jurisdiction founded on 28 U.S.C. § 1343(3).[3] Title 42, United States Code, Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, * * *, of any State * * *, subjects, * * *, any citizen of the United States * * * to the deprivation of any rights, privileges or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The question in this case is whether the defendants deprived the plaintiff of his right to due process "under color of" state law. As stated above, the defendants have admitted in paragraphs 11, 13, 16, and 17 of their answer that they invoked their rights under the Illinois Innkeepers' Lien Laws to seize and hold the plaintiff's property.

In the much cited case of United States v. Classic, 313 U.S. 299, 325–326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), the Supreme Court stated that:

> Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.

Although *Classic* dealt with the action of state officials, it has been widely interpreted to cover acts of private individuals acting in concert with state officials, Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1967), and to cover acts of private individuals exercising authority granted by state law. Hall v. Garson, 430 F.2d 430, 438–440 (5th Cir. 1970); McKinley v. Investors Realty & Management Corp., (N.D.Ill. March 26, 1971, 70 C 3224½); Santiago v. McElroy, 319 F.Supp. 284

---

3. Section 1343(3) provides that:
 The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 * * * * *
 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

(E.D.Pa.1970); Decarlo v. Joseph Horne and Co., 251 F.Supp. 935 (W.D.Pa. 1966).

The above cited cases find support in the rationale espoused by the Supreme Court in Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), a case in which all of the parties were private individuals. *Reitman* involved a husband and wife who sued under certain California civil rights statutes alleging that the defendants had refused to rent them an apartment solely on account of their race. The trial court granted summary judgment to the defendants on the ground that the civil right statutes had been rendered void by the adoption of Art. I, § 26 of the California Constitution which authorized private discrimination. The California Supreme Court reversed, holding that since prohibited state involvement could be found where the State had merely taken affirmative action to make private discriminations legally possible, § 26 was unconstitutional and did not bar the action. The United States Supreme Court affirmed, stating that, "There is no sound reason for rejecting this judgment." *Reitman, supra,* 387 U.S. 376, 87 S.Ct. 1631.

 This rationale, although involving in *Reitman* the Equal Protection Clause of the Fourteenth Amendment, is equally applicable where the State by its affirmative action has made deprivations of due process legally possible. The district court in *Klim, supra,* found, therefore, that *Reitman* was clear authority on which to find 42 U.S.C. § 1983 applicable when a California innkeeper seized a guest's property pursuant to the California innkeepers' lien statutes.

Since 42 U.S.C. § 1983 is applicable, this Court has jurisdiction under 28 U.S.C. § 1343(3) and it is not necessary to decide whether jurisdiction would properly be founded under the alternative basis of 28 U.S.C. § 1331. It should be noted, however, that a large number of cases support the view that § 1331 jurisdiction lies where the complaint, such as the one in the instant case, alleges the taking of property without due process of law, in violation of the Fourteenth Amendment. See *Klim, supra,* 315 F. Supp. 116 and the cases cited therein.

Although this Court has jurisdiction under § 1343(3), there is an additional issue which must be discussed before the Court reaches the merits of the plaintiff's claim, i. e., the convening of a three-judge court under 28 U.S.C. § 2281.

THREE-JUDGE COURT

 The plaintiff by this action seeks, in part, an injunction permanently enjoining defendants from enforcing the Illinois Innkeepers' Lien Laws upon the ground that the laws are unconstitutional. Title 28, United States Code, Section 2281 provides that:

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute * * *, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges * * *.

Although this Court has found that the defendants seized plaintiff's property "under color of" state law within the meaning of that phrase in 42 U.S.C. § 1983, this does not make the defendants officers of the State for purposes of 28 U.S.C. § 2281. As the Supreme Court stated in Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), the three-judge court provision is not a "measure of broad social policy to be construed with great liberality," but rather, is "an enactment technical in the strict sense of the term and to be applied as such." Thus, since no State officer has been named a party defendant, 28 U.S.C. § 2281 is inapplicable and this case can properly be heard and decided by this Court.

## THE ILLINOIS INNKEEPERS' LIEN LAWS

The innkeeper's lien has its roots in early common law. In England the common law rule developed that the innkeeper was bound to provide food and lodging for any traveler who sought refuge in the inn. Furthermore, he was absolutely liable for the safety of the traveler's property during his stay unless it was lost by the traveler himself. It therefore developed that the innkeeper would have a lien upon the property that the traveler brought into the inn for the expense of keeping it as well as for the cost of the food and lodging he provided to the traveler. Robins v. Gray, 2 Q.R. 501 (1895); See also Beale on Innkeepers and Hotels § 3, 3 (1906).

The Illinois version of the innkeeper's lien is codified in Section 57 of the Lien Act, Ill.Rev.Stat., 1969, Ch. 82, § 57, which was enacted March 25, 1874 and in Section 2 of the Innkeepers' Act, Ill. Rev.Stat., 1969, Ch. 71, § 2, which was enacted June 9, 1909.

Chapter 82, Section 57, is a general lien provision which provides that:

> Hotel, inn and boarding house keepers shall have a lien upon the baggage and other valuables of their guests or boarders brought into such hotel, inn or boarding house by such guests or boarders, for the proper charges due from such guests or boarders for their accommodations, board and lodgings and such extras as are furnished at their request.

The hotel proprietor may enforce such lien by sale after giving ten days' notice to the owner of the property, with the lien and the cost of enforcing it to be satisfied out of the proceeds of such sale and with any surplus to be paid to the owner of the property. Ill.Rev.Stat., 1969, Ch. 141, § 3.

Chapter 71, Section 2 [4], is a more detailed provision which provides that a hotel [5] proprietor shall have the right to detain *all* of the property brought into the hotel by the guest until the guest

4. Chapter 71, Section 2 provides that:
 Every hotel proprietor shall have a lien upon all the baggage and effects brought into said hotel by his guests for any and all proper charges due him from such guests for hotel accommodations, and said hotel proprietor shall have the right to detain such baggage and effects until the amount of such charges shall have been fully paid, and unless such charges shall have been paid within sixty days from the time when the same accrued, said hotel proprietor shall have the right to sell such baggage and effects at public auction after giving ten days' notice of the time and place of such sale, by publication of such notice in a newspaper of general circulation in the county in which said hotel is situated, and also by mailing, ten days before such sale, a copy of such notice addressed to said guest at this post office address, if known to said hotel proprietor, and if not known, then to his place of residence registered by said guest in the register of such hotel; and after satisfying such lien out of the proceeds of such sale, together with any costs that may have been incurred in enforcing said lien, the residue of said proceeds of sale, if any, shall, within six months after such sale, on demand, be paid by said hotel proprietor to such guest; and if not demanded within six months from the date of such sale, such residue or remainder

shall be deposited by such hotel proprietor with the county treasurer of the county in which such hotel is situated, together with a statement of such hotel proprietor's claim, the amount of costs incurred in enforcing the same, a copy of the published notice, and the amount received from the sale of said property so sold at said sale; and said residue shall, by said county treasurer, be accredited to the general revenue fund of said county, subject to the right of said guest or his representative to reclaim the same at any time within three years from and after the date of such deposit with said county treasurer, and such sale shall be a perpetual bar to any action against said hotel proprietor for the recovery of such baggage or property, or of the value thereof, or for any damages growing out of the failure of such guest to receive such baggage or property.

5. "Hotel" is defined in Section 4c of Chapter 71 to include "every building or structure kept, used, maintained, advertised, and held out to the public to be a place where lodging, or lodging and food, or apartments, or suites, or other accommodations are offered for adequate pay to travelers and guests, whether transient, permanent or residential, in which 25 or more rooms are used for the lodging, or lodging and food, or apartments, or suites, or other accommodations of such guests."

fully pays for his hotel accommodations. If the charges remain unpaid after sixty days, the hotel proprietor may sell the property at public auction after giving ten days' notice of the time and place of the sale by publication and by mailing such notice to the guest. The lien and the cost of enforcing it is to be satisfied out of the proceeds of the sale. Section 2 further provides that the sale will be a perpetual bar to any action against the hotel proprietor for the recovery of the property, its value, or for damages resulting from the loss of possession.

The absolute liability upon which the innkeepers' lien was premised has been completely abrogated by statute in Illinois. Section 3 of Chapter 71, which was also enacted on June 9, 1909, provided that the hotel proprietor would be absolutely liable for losses only up to certain set amounts, above which negligence would have to be proved. Section 3 was amended on July 21, 1959, to remove the last remnants of the common law absolute liability, so that the proprietor is liable for loss or damage not exceeding $250 only if it is caused by his negligence.

## DUE PROCESS

The main thrust of plaintiff's argument is that the Illinois Innkeepers' Lien Laws authorize a hotel proprietor to seize a guest's personal property without his consent and without notice and prior hearing, in violation of the Due Process Clause of the Fourteenth Amendment. The only Illinois court to decide the issue found that Chapter 71, Section 2, was not violative of due process on the ground that "a statute purporting to give innkeepers a lien on the goods of their guests cannot be held unconstitutional when such statute does not extend beyond the rule established by the common law nor beyond the requirements of public policy." National Malted Food Corp. v. Crawford, 254 Ill. App. 415, 428 (1929).

The rule established by the common law, as stated above, gave the innkeeper a lien coextensive with his liabili-

ty and since the innkeeper's liability has been abrogated, the reasoning in *National Malted Food Corp.* is no longer sound. Furthermore, the fact that the statute does not transgress the bounds of the common law will not sustain it against an attack as unconstitutional, since "[t]he fact that a procedure would pass muster under a feudal regime does not mean it gives necessary protection to all property in its modern forms." Sniadach v. Family Finance Corp., 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed. 2d 349 (1969).

In *Sniadach*, the Supreme Court held that Wisconsin's prejudgment wage garnishment procedure which authorized the taking of property without notice and prior hearing violated the Due Process Clause of the Fourteenth Amendment. The Court stressed that wages were a specialized type of property, the "taking [of] which may impose tremendous hardship on wage earners with families to support." *Sniadach, supra*, 395 U.S. 340, 89 S.Ct. 1822. The Court also noted that the prejudgment garnishment of wages procedure gave the creditor enormous leverage to collect even fraudulent debts.

Although the Court noted that such summary procedure might meet due process requirements in extraordinary situations, citing Ownbey v. Morgan, 256 U.S. 94, 110–112, 41 S.Ct. 433, 65 L.Ed. 837 (1921), Coffin Bros. v. Bennett, 277 U.S. 29, 31, 488 S.Ct. 422, 72 L.Ed. 768 (1928), Fahey v. Mallonee, 332 U.S. 245, 253–254, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), and Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), it found: (1) that the facts presented no situation requiring special protection to the state or to the creditor; and (2) that the Wisconsin statute was not narrowly drawn to meet any such unusual situation.

A careful study of the above cited cases reveals that the situations to which they refer are not comparable to that of the instant case. In *Ownbey, supra*, the Supreme Court held that when a proper-

ty owner left the territorial jurisdiction of the State, the attachment of his property remaining in the State to satisfy claims against him did not violate due process. In *Coffin Bros., supra,* the Court found that although a Georgia statute purported to authorize the State Superintendent of Banks to make assessments, create liens and to execute thereon without any judicial proceedings, the procedure did not violate due process since the defendants were given notice and could have a judicial hearing simply by filing an affidavit of illegality of the assessment, in which case the execution would be by court order.

The Supreme Court in *Fahey, supra,* held that the Federal Home Loan Bank Board's regulation authorizing an appointed conservator to take possession of a federal savings and loan association and providing only for a hearing after the appointment did not violate due process. The Court stated that:

> It is complained that these regulations provide for hearing after the conservator takes possession instead of before. This is a drastic procedure. But the delicate nature of the institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner.

> *Fahey, supra,* 332 U.S. 253, 67 S.Ct. 1556.

Finally, in *Ewing, supra,* the Court held that although Section 304(a) of the Federal Food, Drug and Cosmetic Act allowed the administrative agency to determine, without hearing, whether there was probable cause to seize misbranded articles, it was not violative of due process since the administrative finding was merely a determination by the agency that judicial proceedings should be instituted. As to the necessity of a hearing, the Court stated that:

> It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hear-

ing and a judicial determination. *Ewing, supra,* 339 U.S. 599, 70 S.Ct. 873.

Thus, in *Coffin Bros., Fahey* and *Ewing,* the Court found that even though there were overriding considerations which permitted such summary procedures, due process required that there be an opportunity for a hearing at some stage of the proceedings.

Unlike the statutes involved in *Coffin Bros., Fahey* and *Ewing,* however, the statutes here in issue authorize a hotel proprietor to seize property without any notice and without any hearing, either before or after seizure. The hotel guest is thus afforded no hearing at which he can contest the underlying claim. Therefore, even if the extraordinary circumstances described in the above cited cases existed, the Illinois Innkeepers' Lien Laws would violate due process. It is clear, however, that such extraordinary circumstances do not exist in this case. The plaintiff is present in the State and there is no overriding interest in protecting a creditor's position in a simple debtor-creditor relationship by such drastic procedure.

Furthermore, notwithstanding the language to the contrary in *Ewing, supra,* it is clear that since *Sniadach, supra,* a prior hearing must be given where "a specialized type of property" is the subject of the taking even though "only property rights are concerned." In the instant case, all of the plaintiff's personal property located in his room at the Viceroy Hotel was seized, including clothing, household linens, food, cooking utensils, personal papers and medicine. It is unarguable that these items constitute a type of property the deprivation of which causes greater hardships than the deprivation of mere wages, and therefore, they are undoubtedly embraced by the rule enunciated in *Sniadach. Santiago, supra,* 319 F.Supp. 293; *Klim, supra,* 315 F.Supp. 121–124; La- prease v. Raymours Furniture Co., 315 F.Supp. 716, 722–723 (N.D.N.Y.1970).

Since this Court has found that there is no situation presented requiring spe-

cial protection to the State or creditor, and since the Illinois Innkeepers' Lien Laws are not, therefore, narrowly drawn to meet such unusual situations, the Due Process Clause requires that a hotel guest be given:

> [T]he kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property or its unrestricted use. *Sniadach, supra*, 395 U. S. 343, 89 S.Ct. 1823 (Harlan, J., concurring).

Since both Ill.Rev.Stat., 1969, Ch. 71, § 2 and Ch. 82, § 57 in conjunction with Ch. 141, § 3, authorize the seizure of property without such notice and hearing, they are unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment.

For the reasons stated herein, the plaintiff's motion for partial summary judgment is granted, and the defendants are permanently enjoined from enforcing the Illinois Innkeepers' Lien Laws, Ill.Rev.Stat., Ch. 71, § 2 and Ch. 82, § 57.