**Robert L. HARDY et al.,
Plaintiffs-Appellants,**

**v.**

**J. C. GISSENDANER et al.,
Defendants-Appellees.**

No. 74–1695.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1975.

Joseph J. Levin, Jr., Charles F. Abernathy, Morris S. Dees, Jr., Southern Poverty Law Center, Inc., Montgomery, Ala., for plaintiffs-appellants.

J. Gorman Houston, Jr., Eufaula, Ala., for defendants-appellees.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiffs-appellants represent four members of a class of homeowners residing in Eufaula, Alabama, who were allegedly victimized by a home improvements contractor, William Bell, who contracted with them in 1968 to make certain repairs and additions to their dwellings, in exchange for a promissory note secured by a mortgage on plaintiffs' real property. Bell subsequently assigned the notes to defendant J. C. Gissendaner of the Gissendaner Mortgage Company. Prior to accepting assignment Gissendaner ascertained from plaintiffs that they had no complaints in regard to the work, and obtained from them information relative to the number of payments due, and the amounts and commencement date for payment.[1]

The construction work was never actually completed and later showed hidden defects which became obvious to plaintiffs with use. Plaintiffs, after having attempted unsuccessfully to locate Bell to force him to fulfill his contract, ceased payments on their notes. They were then contacted by Gissendaner who, asserting his rights as holder in due course of the notes, threatened plaintiffs with foreclosure if further payments were not forthcoming and refused to complete the work, for which Bell had contracted. Approximately five years after having signed the notes, plaintiffs filed this civil rights action invoking the jurisdiction of the court under the Thirteenth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1981 et seq., and 28 U.S.C. §§ 1331, 1332, 1343. They requested compensatory and punitive damages and a declaration invalidating Alabama's holder-in-due-course law as unconstitutional and voiding the contracts and mortgages executed by plaintiffs.

The district court upheld the constitutionality of the Alabama holder-in-due-course law and denied the relief sought. We affirm.

■ The rights available to the holder in due course against the maker of the

---

1. An employee of Gissendaner contacted plaintiff Robert Hardy by telephone and Hardy acknowledged the number and amount of payments, the due date of payments, and stated that the work was very satisfactory. The Hardy note and mortgage were in the amount of $5,519.64, which included seven years' interest. Gissendaner himself spoke with plaintiff Joe Strong, who acknowledged that all work was completed and that he knew the number, amount and commencing date of payments. The Strong note and mortgage were in the amount of $3,402, which included seven years' interest.

notes are provided by the terms of the Alabama statute. Code of Alabama, Title 7A, § 3–305. As the district court noted in its opinion, the rights of such a holder are enforced only after suit is filed and due notice is given to the maker. Thus, contrary to plaintiffs' contentions, such rights do not deprive the maker of a hearing but contemplate invocation only after opportunity is offered the maker for a hearing, thus providing ample due process. Gissendaner's status as a holder in due course was stipulated by plaintiffs who thus voluntarily relinquished any defenses against him.[2]

Underlying plaintiffs' claim, however, is the contention that the Alabama holder-in-due-course law deprives them of a *meaningful* hearing by divesting them of their right to interpose legitimate defenses and therefore is unconstitutional. We do not agree. Plaintiffs' theory is based on the contention that the pertinent Alabama law prevents them from asserting the defenses of inferior and incomplete performance of consideration given for the underlying debt. They argue that because of the Alabama law they have been forced to pay and must continue to pay for services far less valuable than contracted for at the risk of losing their homes. Unfortunately, the whereabouts of the wrongdoer, against whom a proper action would lie, and against whom the defense of failure of consideration would be maintainable, are unknown. Plaintiffs, therefore, seek to assert this defense against one who, as a

holder in due course, must be considered as an innocent purchaser of the notes, who acted in good faith, free from fraud, or suspicion of fraud of his transferor, and without knowledge of failure of consideration or any other element which would invalidate his status as holder in due course.

While due process requires that there be an opportunity to present every available defense, American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932), the fact that plaintiffs are barred from interposing certain defenses against Gissendaner, does not amount to a denial of due process where, as here, they are not foreclosed from pursuing their claims for damages or any other relief to which they are entitled against the individual with whom they contracted. *See* Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). Nothing in Alabama law prevents them from doing so. Any deprivation suffered by plaintiffs is the result of the dereliction of the person with whom they had the misfortune of dealing, not the inadequacy or the invalidity of the law.

There is nothing unique or particularly invidious about the holder-in-due-course law of Alabama. Section 3–305 of Title 7A of the Code of Alabama, which defines the rights of such a holder, finds its identical counterpart in statutory enactments of 46 other states.[3] The holder-in-due-course concept has long been recognized and used as a vehi-

---

2. Code of Alabama, Title 7A, § 3–305 lists the rights of a holder in due course:

To the extent that a holder is a holder in due course he takes the instrument free from

(1) all claims to it on the part of any person; and

(2) all defenses of any party to the instrument with whom the holder has not dealt except

(a) infancy, to the extent that it is a defense to a simple contract; and

(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) discharge in insolvency proceedings; and

(e) any other discharge of which the holder has notice when he takes the instrument.

3. Of the 49 states which have adopted the Uniform Commercial Code (all but the State of Louisiana), section 3–305 varies only in the States of Kansas and South Dakota. West, Uniform Laws Annotated, Uniform Commercial Code, Master Edition 2.

cle for promoting easy, fast, and inexpensive negotiability of commercial paper. Article 3 of the Uniform Commercial Code dealing with commercial paper and which outlines the rights of a holder in due course, identical to those of Alabama, "is a continuum of commercial concepts. It is a development that can be traced direct to the genius of Lord Holt and that of Lord Mansfield when they incorporated the Law Merchant into the common law." Egon Guttman, Article 3—Commercial Paper: An Updating of Well-Tried Concepts, 11 How. L.J., 49–70. If the law is in need of further change because of certain inequities suffered by consumers through credit transactions, it must be accomplished by the state legislature.[4]

■ Appellants suggest for the first time on appeal that relief can be granted to them without the necessity of facially invalidating the holder-in-due-course law. Appellants, who are allegedly poorly educated blacks in a low-income bracket, urge us to hold the statute unconstitutional in its application to them and their class because of the absence of a knowing or intelligent waiver by them of certain defenses when signing the promissory notes. They cite as analogous to their contention the companion cases of Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972) and D. H. Overmyer Co., Inc. of Ohio v. Frick Company, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). The Supreme Court in Swarb and Overmyer, respectively, upheld the constitutionality of Pennsylvania's confession of judgment statute and Ohio's cognovit note system, both of which allow judgment against a debtor on default without prior notice and hearing. In Overmyer the Court held that because of the equal bargaining power of the debtor there was a

voluntary, intelligent and knowing waiver of his rights to notice and hearing, but remarked, however, that its holding was "not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue." *Overmyer,* 405 U.S. at 189, 92 S.Ct. at 783; *Swarb,* 405 U.S. at 201, 92 S.Ct. at 772, 773. We find no true analogy between the quoted language from *Swarb* and *Overmyer* and the instant case. Unlike the statutes considered in those cases, the Alabama law not only provides for a hearing against the person asserting his holder-in-due-course rights under the statute, but in no way precludes the debtor from seeking relief against the party with whom he contracted, thus affording ample protection to the debtor.[5]

■ There has been no showing of interference by the State with appellants' property rights which would constitute state action and justify a Fourteenth Amendment claim. Appellants contend that the enactment of the state statute coupled with the necessity of state judicial action for its enforcement amount to state action. They cite in support of their contention the case of Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), in which the Supreme Court held that enforcement by state courts of certain private agreements constituted state action. The important distinction between this case and *Shelley,* which concerned an attempt to apply restrictive property covenants against members of the Negro race, is the complete lack of discrimination in the Alabama holder-in-due-course law, applying as it does without distinction to race, creed, sex or financial status of the indi-

---

**4.** The Alabama Mini-Code, § 4, S. 122, Acts of Alabama (1971) now prohibits the seller from taking a negotiable instrument other than a check in a consumer credit sale.

**5.** Thus Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Sniadach v. Family Finance Corp., 395 U.S. 337,

89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), in which the Pennsylvania and Florida prejudgment replevin statutes were nullified for failure to provide for notice of hearing prior to property seizure, are inapplicable. *Cf. also,* Gonzalez v. County of Hidalgo, Texas, 5 Cir., 1973, 489 F.2d 1043.

vidual. In James v. Pinnix, 5 Cir., 1974, 495 F.2d 206, we upheld the constitutionality of a self-help automobile repossession statute which afforded no pre-seizure notice or hearing, concluding that the mere existence of a permissive state statute was insufficient to constitute state action. *A fortiori*, where notice and hearing is implicit in the statute, there is no proper basis for a Fourteenth Amendment claim.

Affirmed.