**Ann ANASTASIA et al.,
Plaintiffs-Appellants,**

v.

**The COSMOPOLITAN NATIONAL
BANK OF CHICAGO, etc., et al.,
Defendants-Appellees.**

No. 74–1995.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1975.

Decided Sept. 30, 1975.
Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1143.

Fred Lieb, Seymour J. Mansfield, Norden S. Gilbert, Chicago, Ill., for plaintiffs-appellants.

Dennis M. Wilson, Edward S. Silber, R. R. Frankenstein, Chicago, Ill., for defendants-appellees.

Before MOORE, Senior Circuit Judge,[*] and CUMMINGS and BAUER, Circuit Judges.

MOORE, Senior Circuit Judge.

Illinois Revised Statutes ch. 82, § 57[1] and ch. 71, § 2[2] give hotelkeepers a lien

---

[*] Senior Circuit Judge Leonard Page Moore of the United States Court of Appeals for the Second Circuit was sitting by designation.

1. The statute provides:

Hotel, inn and boarding house keepers shall have a lien upon the baggage and other valuables of their guests or boarders brought into such hotel, inn or boarding house by such guests or boarders, for the proper charges due from such guests or boarders for their accommodations, board and lodgings and such extras as are furnished at their request.

2. The statute provides:

Every hotel proprietor shall have a lien upon all the baggage and effects brought into said hotel by his guests for any and all proper charges due him from such guests for hotel accommodations, and said hotel proprietor shall have the right to detain such baggage and effects until the amount of such charges shall have been fully paid, and unless such charges shall have been paid within sixty days from the time when the same accrued, said hotel proprietor shall have the right to sell such baggage and effects at public auction after giving ten days' notice of the time and place of such sale, by publication of such notice in a newspaper of general circulation in the county in which said hotel is situated, and also by mailing, ten days before such sale, a copy of such notice addressed to such guest at his post office address, if known to said hotel proprietor, and if not known, then to his place of residence registered by said guest in the register of such hotel; and after satisfying such lien out of the proceeds of such sale, together with any costs that may have been incurred in enforcing said lien, the residue of said proceeds of sale, if any, shall, within six months after such sale, on demand, be paid by said hotel proprietor to such guest; and if not demanded within six months from the date of such sale, such residue or remainder shall be deposited by such hotel proprietor with the county treasurer of the county in which such hotel is situated, together with a statement of such hotel proprietor's claim, the amount of costs incurred in enforcing the same, a copy of the published notice, and the amount received from the sale of said property so sold at said sale; and said residue shall, by said county treasurer, be accredited to the general revenue fund of said county, subject to the right of said guest or his representative to reclaim the same at any time within three years from and after the date of such deposit with said

on the personal property brought into their establishments by guests to the extent of charges incurred for lodging, board or other services.[3] Ch. 71, § 2 also authorizes the hotelkeeper to detain and eventually, upon continued nonpayment of charges, after notice to the guests[4] to sell such property in order to realize on the lien. Such a sale bars any subsequent action against the hotel proprietor for the recovery of the property or the value thereof. This case represents a constitutional challenge to these provisions.

## I.

The named plaintiffs in this class action were residents of hotels located in Chicago. In each instance they returned to their rooms one day to find that the hotelkeeper had either changed or "plugged" the lock on the door to the room so that the plaintiffs were unable to gain admittance. Upon inquiry, each plaintiff was told by their respective hotelkeepers that they would not be readmitted and the personal property that had been located in the room would not be released until such time as arrearages

in rent had been paid. When efforts by the plaintiffs and their attorneys to regain possession of their property proved unavailing, this lawsuit was filed.[5]

The suit, brought under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, challenged the seizures of the personal possessions of the plaintiffs as both a deprivation of property without due process of law in violation of the Fourteenth Amendment in that no notice or hearing in which the plaintiffs could raise defenses to the alleged nonpayments of rent[6] was provided, and an unreasonable search and seizure in contravention of the Fourth Amendment. In addition to damages, the plaintiffs sought a declaration that ch. 82, § 57 and ch. 71, § 2 were unconstitutional and an injunction restraining the defendants from acting pursuant to these sections. On January 6, 1973, the district court granted leave to intervene as defendant to several of Chicago's large hotels, and on June 5, 1973, granted plaintiffs' motion to proceed as a plaintiff and defendant class action.[7]

After the plaintiffs had submitted a motion for summary judgment, the dis-

---

county treasurer, and such sale shall be a perpetual bar to any action against said hotel proprietor for the recovery of such baggage or property, or of the value thereof, or for any damages growing out of the failure of such guest to receive such baggage or property.

3. Ill.Rev.Stat. ch. 71, § 4c defines "hotel" as follows:

The word "hotel" within the meaning of this act includes every building or structure kept, used, maintained, advertised, and held out to the public to be a place where lodging, or lodging and food, or apartments, or suites, or other accommodations are offered for adequate pay to travelers and guests, whether transient, permanent or residential, in which twenty-five or more rooms are used for the lodging, or lodging and food, or apartments, or suites, or other accommodations of such guests.

4. Similar, but not identical, sale provisions for realization on the lien provided by ch. 82, § 57 are contained in Ill.Rev.Stat. ch. 141, § 3.

5. The property of plaintiffs Anastasia and Smith has now been returned to them. Plain-

tiff Glass was offered the return of his property, but he refused to accept it on the ground that certain items were missing.

6. See North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Mitchell v. W. T. Grant, Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

7. The district court defined the plaintiff class as:

Those persons in Chicago, Illinois, except for the owners, managers and operators of hotels, whose personal property is now detained by a hotel pursuant to the Illinois Innkeepers' Lien Law

The defendant class included:

Those owners, managers, and operators of hotels in Chicago, Illinois, who now have the personal property of the class of plaintiffs detained pursuant to the Illinois Innkeepers' Lien Law.

trict court *sua sponte* raised the issue of state action and issued a memorandum dismissing the complaint for lack of jurisdiction upon concluding that the action of the defendant hotels was not taken "under color" of law within the meaning of 42 U.S.C. § 1983.[8] From the judgment entered thereon, the plaintiffs appealed. We affirm.

## II.

Ever since the *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), it has been recognized that the Fourteenth Amendment serves as a limitation only on governmental action and does not affect purely private conduct. But while this proposition is easily stated, the distinction between governmental and private action is seldom very clear. With increasing frequency in recent years, the federal courts have been drawn into the sphere of creditor-debtor relations to decide whether certain statutorily authoriz-

ed creditor conduct constitutes action "under color of" state law within the meaning of section 1983,[9] or, what is essentially the same question,[10] whether the conduct is "state action" under the Fourteenth Amendment. A number of cases have considered the issue in the context of the self-help repossession remedy provided to secured creditors by sections 9–503 and 9–504 of the Uniform Commercial Code.[11] Only last year this court considered an Indiana common law and statutory mechanic's lien, finding no state action where an automobile repairman detained a car after the owner refused to pay the bill for repairs. *Phillips v. Money,* 503 F.2d 990 (7th Cir. 1974), *cert. denied,* 420 U.S. 934, 95 S.Ct. 1141, 43 L.Ed.2d 409 (1975). And the context in which the state action question in this case arises—detention of personal property pursuant to a statutory landlords' or innkeepers' lien—is by no means unique, having been the subject of a number of court decisions.[12] In fact, detention of

---

**8.** We note that the proper disposition, given the district court's conclusion, would have been to dismiss the claims for failure to state a claim upon which relief could be granted. *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Adams v. Southern California First National Bank,* 492 F.2d 324, 338 (9th Cir. 1973), *cert. denied,* 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974).

**9.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**10.** *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Phillips v. Money,* 503 F.2d 990, 992 (7th Cir. 1974), *cert. denied,* 420 U.S. 934, 95 S.Ct. 1141, 43 L.Ed.2d 409 (1975).

**11.** To cite only the cases decided by the Circuit Courts of Appeals, which have unanimously held that these provisions of the UCC are not a basis for finding state action: *Calderon v. United Furniture Co.,* 505 F.2d 950 (5th Cir. 1974); *Brantley v. Union Bank & Trust Co.,* 498 F.2d 365 (5th Cir.), *cert. denied,* 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309

(1974); *James v. Pinnix,* 495 F.2d 206 (5th Cir. 1974); *Turner v. Impala Motors,* 503 F.2d 607 (6th Cir. 1974); *Gibbs v. Titelman,* 502 F.2d 1107 (3rd Cir.), *cert. denied,* 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *Nichols v. Tower Grove Bank,* 497 F.2d 404 (8th Cir. 1974); *Nowlin v. Professional Auto Sales, Inc.,* 496 F.2d 16 (8th Cir.), *cert. denied,* 419 U.S. 1006, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *Bichel Optical Laboratories, Inc. v. Marquette National Bank of Minneapolis,* 487 F.2d 906 (8 Cir. 1974); *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1973), *cert. denied,* 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974). For related state action cases see also *Bryant v. Jefferson Savings & Loan Assn.,* 166 U.S.App.D.C. 178, 509 F.2d 511 (1974); *Hardy v. Gissendaner,* 508 F.2d 1207 (5th Cir. 1975); *Fletcher v. Rhode Island Hospital Trust National Bank,* 496 F.2d 927 (1st Cir.), *cert. denied,* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *Bond v. Dentzer,* 494 F.2d 302 (2d Cir.), *cert. denied,* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 63 (1974); *Shirley v. State National Bank of Connecticut,* 493 F.2d 739 (2d Cir.), *cert. denied,* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974).

**12.** *Davis v. Richmond,* 512 F.2d 201 (1st Cir. 1975) (innkeepers' lien; no state action); *Hall v. Garson,* 430 F.2d 430 (5th Cir. 1970) (landlords' lien; state action); *Johnson v. Riverside Hotel, Inc.,* 399 F.Supp. 1138 (S.D.Fla.1975) (innkeepers' lien; state action); *Barber v. Rader,* 350 F.Supp. 183 (S.D.Fla.1972) (landlords'

property under authority of the very statutes challenged herein has in another case been declared unconstitutional by the United States District Court for the Northern District of Illinois. *Collins v. Viceroy Hotel Corp.,* 338 F.Supp. 390 (N.D.Ill.1972).[13]

Before moving to an analysis of the plaintiffs' contentions, it is important to note that this case involves only the seizure of personal property by the defendant hotels. There have been no sales of the property of the named plaintiffs although ch. 71, § 2 authorizes sales under certain conditions. And the plaintiff class is defined as "[t]hose persons . . whose personal property is now detained by a hotel. . . ." (*See* note 7 *supra*). There is no mention made of a sale. Therefore, we have in this case no occasion to consider whether a statutorily authorized sale, with the concomitant bar on any subsequent action by a guest against a hotel proprietor for the recovery of any property or the value thereof, would constitute state action. *Cf. Lucas v. Wisconsin Electric Power Co.,* 466 F.2d 638, 656 (7th Cir. 1972) (en banc), *cert. denied,* 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973) (State had authorized electric company to enter private property but that authority had not been invoked in the case at bar; had it been invoked, "an entirely different issue would [have been] presented.") It is appropriate, however, to note Mr. Justice Clark's caveat made with regard to state action cases: " 'Differences in circumstances . . . beget appropriate differences in law . . ..' " *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 726, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961), *quoting, Whitney v. Tax Commission,* 309 U.S. 530, 542, 60 S.Ct. 635, 84 L.Ed. 909 (1940).

The plaintiffs advance two theories under which they contend that state action is present in this case. The first might properly be termed an "entwinement" [14] theory whereby the state has assertedly significantly involved itself in the action of the hotelkeepers, so as to make the acts of these private individuals state action for the purposes of the Fourteenth Amendment and section 1983. The second theory is the so-called "public function" theory: that the State of Illinois has allowed hotel proprietors to perform a governmental function in enforcing their lien, and therefore that their actions must be governed by constitutional limitations.

## A. *Entwinement*

██ The proper focus for determining whether state action exists under this theory was recently stated by the Supreme Court as follows:

[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (holding that the termination of electric service by a public utility for nonpayment of bills was not state action). The test is whether the state has significantly involved itself in the challenged conduct. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). And a conclusion as to degree of involvement can be reached only by "sifting facts and weighing circumstances." *Burton v. Wilmington Parking Authority, supra,* 365 U.S. at 722, 81 S.Ct. 856.

lien; state action); *Klim v. Jones,* 315 F.Supp. 109 (N.D.Cal.1970) (innkeepers' lien; state action); *Holt v. Brown,* 336 F.Supp. 2 (W.D.Ky. 1971) (landlords' lien; state action); *Blye v. Globe Wernicke Realty Co.,* 33 N.Y.2d 15, 347 N.Y.S.2d 170, 300 N.E.2d 710 (1973) (innkeepers' lien; state action).

**13.** The district court in this state cited *Collins,* which had not been brought as a class action,

and although giving "great weight" to that opinion noted that it was but "one of several opinions which stand on one side of a very definite split of authority" on this issue.

**14.** *See* Clark & Landers, Sniadach, Fuentes *and Beyond: The Creditor Meets the Constitution,* 59 Va.L.Rev. 355, 379 (1973).

The plaintiffs argue that by passing a statute authorizing the private seizure of the possessions of hotel residents, the State of Illinois has lent affirmative support and encouragement to hotel proprietors. They point out that ch. 71, § 2 in particular has altered the nature of the common law innkeepers' lien by expanding the class of establishments which can invoke it—a fact acknowledged by the defendants. At common law, the lien existed only in favor of innkeepers—one who took in transient guests, was bound by law to do so, and was absolutely liable for injury to the guest's person or property. Keepers of boardinghouses or lodginghouses had no corresponding obligations and liabilities and possessed no comparable lien until granted by statute.[15] Plaintiffs observe as well that Illinois has eliminated the principal *raison d'être* of the common law innkeepers' lien by placing dollar ceilings on the extent of a hotelkeeper's liability and for some types of property abolishing absolute liability by requiring a showing of fault on the part of the hotelkeeper. *See* Ill.Rev.St. ch. 71, §§ 1, 3, 3.1, 4.

Primary reliance is placed on *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), where the Supreme Court found state action in an amendment (art. 1, § 26 [Proposition 14] to the California constitution providing that the state could not limit a person's right to rent or sell real estate to whomever he chooses. A black couple had sued under California statutes providing for equal accommodations, alleging that the defendants had refused to rent them an apartment solely on account of their race. The trial court rendered summary judgment for the defendants on the ground that the statutes had been rendered void by the adoption of art. 1, § 26. The California Supreme Court reversed the trial court, and the Supreme Court affirmed that decision. While superficially *Reitman* is similar to this case—in both instances a state enact-

ment authorized the actions of private individuals—we consider it by no means controlling. The immediate purpose of Proposition 14 was to override recently enacted state anti-discrimination legislation, including a fair housing act. The California Supreme Court, which was familiar with the background of the enactment and the milieu in which it would operate, had made a finding that the provision would have the effect of significantly involving the state in matters of private discrimination. By constitutionalizing the right privately to discriminate, the amendment immunized such conduct "from legislative, executive, or judicial regulation at any level of the state government." 387 U.S. at 377, 87 S.Ct. at 1632. It effectively removed the issue of private discrimination from the political arena, or at least placed severe handicaps on those striving for its elimination. *See* Black, *Foreword: "State Action," Equal Protection, and California's Proposition 14,* 81 Harv.L.Rev. 69, 81–82 (1967). Furthermore, Proposition 14 operated in direct opposition to an express constitutional goal embodied in the post-Civil War amendments: the elimination of racial discrimination. A number of courts have acknowledged that racial discrimination involved in a case may be an appropriate factor for consideration in the sifting and weighing of circumstances required in an analysis of state action questions. *E. g., Adams v. Southern California First National Bank, supra,* 492 F.2d at 333, and n. 23; *Grafton v. Brooklyn Law School,* 478 F.2d 1137, 1142 (2d Cir. 1973) (Friendly, J.).

What is present in this case differs substantially from *Reitman.* The statutes involved here were not enacted in contravention of a constitutional goal. Ch. 82, § 57 was passed in 1874 and ch. 71, § 2 in 1909. Both provisions remain unchanged from their original form. To be sure, these provisions allowed hotel proprietors to take action that the common law did not previously permit. But

---

**15.** *See* J. Beale, The Law of Innkeepers and Hotels § 298 (1906); Hogan, *The Innkeeper's Lien at Common Law,* 8 Hastings L.J. 33 (1956).

we do not attach overriding significance to this limited expansion of the common law. It is but one consideration to be included in the mix. The First Circuit has recently failed to be persuaded that a statutory expansion of the common law innkeepers' lien was a basis for finding state action:.

> The statute at issue is a fairly unremarkable product of the continuing legislative function to define creditors' rights. . . . If it goes beyond the common law, it does so merely by broadening the class (innkeepers) having traditional right to a possessory lien. And even this modest changed occurred 115 years ago.

*Davis v. Richmond,* 512 F.2d 201, 203 (1st Cir. 1975), (citation omitted). And although the Supreme Court in *Jackson v. Metropolitan Edison Co., supra,* noted that there existed a common law right to terminate service for non-payment, 419 U.S. at 354 n. 11, 95 S.Ct. 449, the Court apparently did not consider this a crucial factor in finding an absence of state action. At the turn of the century, the concept of due process had not evolved to its present-day point where summary repossession of property with participation of state officers is constitutionally impermissible in all but the most limited circumstances.[16] And it cannot be persuasively argued, in light of the then existing remedy of self-help for innkeepers and others, that the Fourteenth Amendment upon its enactment was intended to do away with summary self-help procedures. *Adams v. Southern California First National Bank, supra,* 492 F.2d at 337.

Nor do the hotelkeepers' remedies possess an exalted constitutional status where they are insulated from the possibility of legislative reforms. They are subject to the operation of normal political forces. This is also not a case in which the state has actively involved itself in the affairs of hotel proprietors. There is no continuing interdependence such as characterized the lessor-lessee relationship between the parking authority and the coffee shop in *Burton v. Wilmington Parking Authority.* Nor is there even an ongoing regulatory scheme such as the liquor licensing in *Moose Lodge* or the public utility regulation in *Jackson v. Metropolitan Edison Co.,* both of which the Supreme Court found were in any event an insufficient basis for finding state action. All that the State of Illinois has done is to enact statutes which permit a private hotel proprietor to detain the property of guests in an establishment owned by him. The statutes do not compel such a procedure. *See Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 170–71, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Peterson v. City of Greenville,* 373 U.S. 244, 248, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963); *Moose Lodge No. 107 v. Irvis, supra,* 407 U.S. at 178–79, 92 S.Ct. 1965 (Although State action was not otherwise present, it did exist where a state regulation required adherence to a racially restrictive by-law). They merely permit it, much in the same way as Georgia law in *Evans v. Abney,* 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970), permitted interpretation of Senator Bacon's will to require the closing of a public park rather than apply the *cy pres* doctrine and make the park racially integrated. The impact on private ordering is minimal. *See* Burke & Reber *State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment,* 47 S.Cal. L.Rev. 1, 47 (1973). This degree of involvement falls short of the significant degree of encouragement or affirmative support necessary to the existence of state action.

### B. *Public Function*

The actions of private individuals or entities on whom the state has conferrred powers and functions tradionally exclusively reserved to the state may become subject to constitutional limitations. *E. g., Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (operation of a municipal park); *Terry v.*

---

**16.** See the cases cited in note 6 *supra.*

*Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (conducting of a pre-primary election by a political organization); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (operation of a company-owned town). *See also Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 352–53, 95 S.Ct. at 454 ("If we were dealing with the exercise by Metropolitan of some power delegated to it by the State which is traditionally associated with sovereignty, such as eminent domain, our case would be quite a different one."). The plaintiffs argue that by allowing hotel proprietors to seize the personal property located in a resident's room without any prior adjudication to the proprietor's claim for charges, the state has delegated a state function traditionally performed by officers of the law and court. The plaintiffs rely most heavily on *Hall v. Garson,* 430 F.2d 430 (5th Cir. 1970). There a private landlord had entered the dwelling of a tenant and removed a television set pursuant to a Texas statute giving landlords a lien on the personal property of their tenants. The court found state action on the ground that the landlord was performing what was ordinarily a state function:

> In this case the alleged wrongful conduct was admittedly perpetrated by a person who was not an officer of the state or an official of any state agency. But the action taken, the entry into another's home and the seizure of another's property, was an act that possesses many, if not all, of the characteristics of an act of the State. The execution of a lien, whether a traditional security interest or a quasi writ of attachment or judgment lien has in

Texas traditionally been the function of the Sheriff or constable.

*Id.* at 439.

Perhaps distinctions can be drawn between this case and *Hall,* but we do not think that they would be very satisfactory ones. For example, the Texas statute in *Hall* expressly granted landlords the right to enter a dwelling by authorizing them "to take and retain possession" of "property found within the dwelling." *Id.* at 432 n. 1. Ch. 71, § 2 does not contain the same language, *cf. Calderon v. United Furniture Co.,* 505 F.2d 950 (5th Cir. 1974), but the right to enter a room may be implicit in the statute. Also, involved in this case is a hotel room, rather than an apartment or house. But there is no question that the plaintiffs in this case used the hotels as their principal long-term residences. Thus, the distinctions do not cut very deeply. Fundamentally, we simply disagree with the result in *Hall.*[17] The historical accuracy of that case's assertion that the execution of liens was traditionally a state function has been questioned. Burke & Reber, *State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment,* 47 S.Cal.L.Rev. 1, 50 (1973). And this assessment seems correct, except insofar as *Hall* may have relied on particular characteristics of prior Texas law. Plaintiffs freely acknowledge the hoary nature of the innkeepers' lien, and a landlord's right to seize property of a tenant whose rent is in arrears has common law roots as well.[18] Thus, while the sheriff unquestionably is often the party who executes a lien, the function can hardly be said to be traditionally and exclusively that of the state. At most it

---

**17.** Because we are choosing one of the views on which there is a conflict between circuits, this opinion was circulated, before filing, to all judges of this Court in regular active service. A majority voted against a hearing *en banc* on this issue, but Judges Swygert and Stevens voted for such a hearing.

**18.** 2 F. Pollock & F. Maitland, The History of English Law 576 (2d ed. 1898). In Illinois a landlord has the right to seize and detain the property of a nonpaying tenant, Ill.Rev.Stat. ch. 80, § 16, although apparently only after a

distress proceeding has been commenced. *Cottrell v. Gerson,* 296 Ill.App. 412, 16 N.E.2d 529 (1938), *aff'd,* 371 Ill. 174, 20 N.E.2d 74 (1939).

Other courts have recognized the existence of some form of self-help repossession at common law. *E. g., Gibbs v. Titelman,* 502 F.2d 1107, 1114 (3d Cir.), *cert. denied,* 419 F.2d 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *Adams v. Southern California First National Bank, supra,* 492 F.2d at 337.

is one that has been shared by the state with private persons. We see little similarity between this case and the public function cases decided by the Supreme Court and therefore find no basis for concluding that there is state action here.

Because we hold that there is no state action, we have no occasion to consider whether the actions of the hotel proprietors would be violative of the Fourth or Fourteenth Amendment had state action been present.[19]

Affirmed.

---

19. We note that the plaintiffs are not left remediless if their property was seized without good cause. They should be entitled to bring an action for replevin and collect whatever damages might have been caused by the loss of their property. Ill.Rev.Stat., ch. 119, § 1 *et seq.* (Supp.1975–76).