Otis **JENNER** and Arlene **Jenner, Plaintiffs,**

v.

Eva **SHEPHERD** and Lawrence **Shepherd, et al., Defendants.**

No. NA 84–291–C.

United States District Court, S.D. Indiana, New Albany Division.

May 20, 1987.

Cheryl A. Carpenter, Jeffersonville, Ind., for plaintiffs.

Phillip W. Shea, Jeffersonville, Ind., for defendants.

## MEMORANDUM DECISION

NOLAND, District Judge.

The plaintiffs Otis and Arlene Jenner brought this action seeking declaratory relief and damages under the civil rights

statute 42 U.S.C. § 1983 alleging that the defendants Eva and Lawrence Shepherd, and their son Steve Shepherd (the "Shepherds") had deprived them of property without due process by detaining their personal property pursuant to the common law innkeepers lien codified at Ind.Code 32–8–27–2 and made applicable to mobile home owners by Ind.Code 13–1–7–33. The plaintiffs have alleged that the Shepherds' conduct violated the Indiana Constitution and have also advanced various state law causes of action. The plaintiffs seek a declaration from this Court that Ind.Code 32–8–27–2 and Ind.Code 13–1–7–33 are unconstitutional and ask for an award of compensatory and punitive damages from the Shepherds under 42 U.S.C. § 1983 in an amount in excess of $15,000, and attorney fees pursuant to 42 U.S.C. § 1988 in the amount of approximately $6,700. The defendants have filed a counterclaim seeking back rent and damages. In addition to the Shepherds, the plaintiffs originally brought this section 1983 action against Don Ennis, a Charlestown police officer and the City of Charlestown. Prior to the trial of this case, the plaintiffs settled their section 1983 claims with defendants Ennis and the City of Charlestown for the sum of $2,690.00. A release was given by the plaintiffs and these governmental defendants were dismissed from this action. Trial of this action against the Shepherds, the remaining defendants, was had on April 13, 1987. This Memorandum Decision is entered in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, which allows findings of fact and conclusions of law to appear in a memorandum of decision filed by the court.

## I.

The facts established by the evidence presented by the parties are as follows. At the times relevant to this action, Eva and Lawrence Shepherd owned and operated a mobile home park in Charlestown, Indiana. Their son Steve Shepherd performed the maintenance work at the park for his par-

ents. On or about June 1, 1984, Eva Shepherd was contacted by Hoosier Valley, a private organization which assists needy families to find clothing, shelter and employment, which asked if she would rent a home in the park to a needy family. Eva Shepherd agreed, and the plaintiffs, Otis and Arlene Jenner and their teenage daughter and their son and his wife and child, moved into a small three bedroom mobile home that afternoon.

At the time the Jenners moved into the Shepherds' mobile home, Otis Jenner, a white male, was unemployed, having been laid off from his job with the Valley Line Company, a shipping or maritime company, four months before. He returned to the Jeffersonville, Indiana area believing that work would be available for him in the industry. Prior to his lay-off, Otis Jenner had worked steadily in the maritime industry since 1953 except for a period from 1979–1983 when he drove a cab in Las Vegas, Nevada.

Throughout the two and one-half months that the Jenners lived in the Shepherds' mobile home, they caused damage to the mobile home, created disturbances which required police intervention and failed to pay the $235 monthly rent pursuant to their agreement. Eva Shepherd testified[1] that she was called at home on a number of occasions because the Jenner teenagers would party in the mobile home park until two or three o'clock in the morning causing such a disturbance that the police would have to be called to quiet them down. She also testified that during this time she could see physical damage being done to the window frames of the mobile home. Eva Shepherd testified that during July, trouble arose between Arlene Jenner and her son and daughter-in-law which resulted in her son and his family moving out of the mobile home and in with some other residents in the park. Later that month the police removed her son's baby to the custody of the Clark County welfare department.

1. Lawrence Shepherd was not able to attend the trial to testify because he is suffering from leu-

kemia.

The Jenners never paid rent for the month of June, 1984. The rent of $235 was to be paid in advance on the first day of each month. At the end of June, the Jenners' rent was paid by private charitable groups through an arrangement with Hoosier Valley. The Jenners did not pay the July rent until July 24th. At that time, Eva Shepherd talked to Otis Jenner about the problem of the late rent payments. Otis Jenner promised that he would be able to pay her on time because he was expecting to receive unemployment checks. He also told her that he was trying to sell his van and that he would pay the August rent from the proceeds. Eva Shepherd discovered that Otis Jenner sold his van to a neighbor in the park for $500 in cash; however, Otis Jenner did not pay the rent as he had promised. When Eva Shepherd asked him for the August rent on August 2nd or 3rd, he was not able to pay. Otis Jenner testified at trial that he had used the money from the sale of the van to pay rent on a mobile home in another park to provide a home for his son and his daughter-in-law. After the Jenners failed to pay the August rent, Eva informed the Jenners in writing that they would be evicted. Eva Shepherd testified that in response to the threatened eviction Otis Jenner begged her not to evict them because a court proceeding was being held on August 13, 1984 to determine whether the baby would be returned to the Jenners. Otis Jenner told her that the family needed to stay until August 13 because if they did not have an address they would not get the baby back. Eva Shepherd agreed to let him stay until August 13 and he promised to move as soon as the hearing was over. Thereafter, from the 13th of August until the 18th of August, he would tell Eva Shepherd every day that the family would be out of the Shepherd mobile home the next morning.

Finally, on the morning of the 18th of August, Steve Shepherd went to the mobile home park to unlock the laundry facilities at 8:00 A.M. Eva Shepherd testified that Steve called her from the park and told her that the Jenners were not going to move that morning and that Otis Jenner was threatening him. Steve Shepherd also told

her that he thought that they were going to have some problems. On her way to the park Eva Shepherd stopped by the Charlestown police department and talked to officer Don Ennis, telling him that she thought that there would be problems at the park because of the threats made by the Jenners. Officer Ennis offered to follow her to the park in case she had any problems.

When she got to the mobile home occupied by the Jenners, Otis Jenner told her that he was not going to move. Eva Shepherd testified that she had a copy of the innkeepers' rights which she showed to Otis Jenner. She told him that if he did not pay then he would have to move. Officer Ennis suggested that he read the innkeepers' rights; upon reading the paper that Eva Shepherd had, Otis Jenner told his wife that they had to go. The Jenners left the premises.

Steve Shepherd locked the front door of the mobile home with a padlock. On August 21, 1984 Eva packed the remainder of the Jenners' belongings and had them stored in an empty building. Upon inspection, Eva Shepherd discovered that the Jenners had done extensive damage to the mobile home and that the inside of the home was filthy. The curtains were gone and the rods had been broken. Cigarettes had been extinguished on the carpeting, the mattresses for the beds were dirty as though they had been used without sheets, and dried vomit had been left in the bathroom sink. Drawers built into the home had been pulled out of the walls and broken and the window frames had been torn out of the trailer. The cost of the repairs for damage done to the trailer was approximately $200.00 excluding the labor performed by Steve Shepherd and Eva Shepherd repairing and cleaning the home to prepare it for rental.

In approximately October of 1984 the Jenners contacted Eva Shepherd and offered to pay a pro rata rental for the August past-due rent in the amount of approximately $140.00 for the return of their property. Eva Shepherd requested the additional sum of approximately $250 to pay for the damages to the mobile home

and the costs for the rental of a truck to haul their belongings into storage before releasing their property.

There was conflicting testimony concerning whether the Jenners made repeated requests for the return of medication and forms needed to process Otis Jenner's unemployment compensation. The Court accepts the testimony of Eva Shepherd that she had no knowledge of any requests for such items. Eva Shepherd testified that the Jenners contacted them only several months after they left the premises on August 18th. She was not able to make a request for damages to the mobile home until that time because she had not heard from them prior to then. Approximately one year after the Jenners moved from the mobile home park, the Shepherds released the Jenners' possessions to them.

The complaint in this action was filed on December 12, 1984. Attached to the complaint as Exhibit A was a list of all personal property detained by the Shepherds and the value of the items. The total value of the Jenners' property was stated to be $1,616.00. At trial, a second list, purporting to show the replacement cost of the property which the Jenners left in the mobile home, was introduced into evidence. The total cost for the replacement of items was stated to be approximately $5,000.00. Otis Jenner testified that his wife had prepared the second list of property.[2] He admitted that he did not have personal knowledge of the cost of all the property on the list.

## II.

The plaintiffs' complaint, which itself is not a model of clarity advances seven "claims" for relief. The first claim alleges that the defendants have violated 46 U.S.C. § 11110 which prohibits the attachment of a lien against a seaman's clothing; the

second and third claims seek redress for a deprivation of the plaintiffs' procedural due process rights pursuant to 42 U.S.C. § 1983; the fourth claim alleges a deprivation of rights secured by the Indiana Constitution; the fifth claim asserts that the defendants made improper use of the Indiana innkeepers' lien to evict the plaintiffs; the sixth claim alleges that the Indiana innkeepers' lien is unconstitutional because it deprives the plaintiffs of due process rights guaranteed by the Fourteenth Amendment;[3] and the seventh claim advances theories of state tort law. For the reasons set forth fully below, the Court finds that the plaintiffs have failed to meet their burden of proving that the defendants violated any of the plaintiffs' federal constitutional rights or acted contrary to federal law as asserted by the first, second, third and sixth claims of the plaintiffs' complaint. In the interest of comity and federalism, the Court therefore abstains from considering the state law claims asserted by the fourth, fifth and seventh claims of the plaintiffs' complaint and the defendants' counterclaim.

a. *The First, Second, Third and Sixth Claims*

■ Section 11110 of Title 46 provides that:

The clothing of a seaman is exempt from attachments and liens. A person detaining a seaman's clothing shall be fined not more than $500, imprisoned for not more than six months, or both.

The plaintiffs claim that the defendants have violated this section by detaining Otis Jenner's clothing. The plaintiffs however have failed to meet their burden of establishing that Otis Jenner is a seaman within the meaning of the statute. Section 10101 of Title 46 defines "seaman" as "... an individual ... engaged or employed in any

---

**2.** Arlene Jenner neither appeared nor testified at trial.

**3.** The plaintiffs also alleged a deprivation of Fifth Amendment guarantees to due process. However, the Fifth Amendment is only applicable to conduct attributable to the federal government, not to conduct attributable to the state or to state actors. The plaintiffs have not

alleged that the federal government was in any way involved in this action. Therefore, this action is properly brought only under the Fourteenth Amendment which protects individuals from deprivations of property without due process of law by a state or by conduct fairly attributable to a state.

capacity on board a vessel." The evidence presented at trial indicates that Otis Jenner was neither employed at the time he and his family moved into the Shepherds' mobile home park nor when he and his family left the Shepherds' mobile home park. He testified that during the month of July he was able to work for two weeks; however, it is not clear from his testimony whether he was employed as a seaman or in some other capacity in the shipping industry. There are a number of jobs in shipping and upon navigable waters which are not encompassed in the term seaman. *Carter v. Helena Marine Service, Inc.*, 251 Ark. 876, 475 S.W.2d 528, 529 (1972). *See, e.g., Blackton v. Gordon*, 303 U.S. 91, 58 S.Ct. 417, 82 L.Ed. 683 (1938) (the master of a vessel is not a seaman within the terms of 46 U.S.C. § 601, now 46 U.S.C. § 11109). The evidence establishes that at the time the Shepherds detained the Jenners' personal property, Otis Jenner was not employed or engaged as a seaman or in any other capacity. Otis Jenner has failed to prove that he is a seaman entitled to the protection of 46 U.S.C. § 11110.

The second and third claims of the plaintiffs' complaint brought under 42 U.S.C. § 1983 challenge the Shepherds' actions and the detention of the plaintiffs' property as a deprivation of property without due process of law in violation of the Fourteenth Amendment. Section 1983 provides a remedy for persons who have been deprived of rights secured by the United States Constitution when that deprivation occurs under color of state law.[4] In order to succeed on their section 1983, the plaintiffs must prove both that the Shepherds violated the Fourteenth Amendment and that the Shepherds acted under color of state law.

The Court notes at the outset that this case came to trial in a rather unusual posture for a § 1983 action. Although origi-

nally brought against the City of Charlestown and Don Ennis, a Charlestown police officer, the plaintiffs settled their claims in full with these governmental defendants for the sum of $2,690.00 and dismissed the action against them. The plaintiffs now seek compensatory and punitive damages and attorney fees under the Civil Rights Act, 42 U.S.C. § 1983 and 42 U.S.C. § 1988 in excess of $20,000 from the Shepherds, the only remaining defendants. Because the plaintiffs have dismissed the action against the City of Charlestown and Officer Don Ennis, the Court is precluded from considering whether the actions of the dismissed governmental defendants effected an unconstitutional deprivation of the plaintiffs' property. The plaintiffs have effectively limited the Court to the consideration of whether the Shepherds, as private individuals, violated the plaintiffs' Fourteenth Amendment rights.

The Fourteenth Amendment provides in pertinent part that "... nor shall any State deprive any person of life, liberty or property without due process of law...." The Fourteenth Amendment limits only governmental action and does not restrict individual or private action. *See Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The requirement of due process of law is directed at the several States and "can be violated only by conduct that may be fairly characterized as "state action". *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Because the Fourteenth Amendment limits only governmental action, the threshold determination which the Court must make is whether the detention of the plaintiffs' personal property by the Shepherds, who acted under the authority of the Indiana innkeepers lien, Ind.Code 32-8-27-2 as applied to mobile homes, Ind.Code 13-1-7-33 constitutes state action.

**4.** 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The Court's determination of whether state action in this case exists is governed by *Anastasia v. Cosmopolitan National Bank*, 527 F.2d 150 (7th Cir.1975) [5] which held that there was no state action where the innkeepers had detained the personal property of their guests or tenants pursuant to Illinois statutes which give hotelkeepers a lien upon the personal belongings of a guest to the extent of charges for the accommodations. Ill.Rev.Stat. ch. 82, § 57 and ch. 71, § 2. In *Anastasia* the plaintiffs were hotel residents who returned to their rooms to find that the innkeepers had either changed or plugged the locks on their doors so that they could not enter their rooms. The plaintiffs were informed that their belongings would not be released until all arrearages in rent had been paid. The plaintiffs brought an action under 42 U.S.C. § 1983 seeking damages and a declaration that the Illinois statutes were unconstitutional.

In holding that the actions of the hotelkeepers did not amount to state action, the Seventh Circuit examined both the "entwinement" theory of state action and the "public function" theory of state action.

Rejecting the entwinement theory, the Seventh Circuit noted that:

> [T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

*Anastasia*, 527 F.2d at 154, quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). The question then is "whether the state has significantly involved itself in the challenged conduct." *Id.*, citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971–72, 32 L.Ed.2d 627 (1972). The existence of the Illinois statutes which allowed hotelkeepers to exercise common law self-help remedies but which did not compel the actions of the hotelkeepers simply fell "short of the significant degree of encouragement or affirmative support necessary" to constitute state action. *Anastasia*, 527 F.2d at 156. *See also Davis v. Richmond*, 512 F.2d 201 (1st Cir. 1975).

The Indiana statutes which allow the Shepherds to detain the personal property of persons staying in their mobile home park are very similar to the Illinois statutes in *Anastasia*. Ind.Code 32–8–27–2 gives the innkeeper a lien on the property and allows him to detain such property until the charges are paid in full. Ind.Code 13–1–7–33 merely extends the common law innkeepers lien to mobile home park owners. The statutory expansion of the lien to include the mobile home park owners does not provide a basis for the existence of state action. *Anastasia*, 527 F.2d at 156; *Davis*, 512 F.2d at 203. Further, the statutes merely allow the mobile home park owners to exercise self-help remedies and do not compel the procedures the Shepherds used to detain the property of the Jenners. The existence of the Indiana statutes does not establish the significant state involvement necessary for the existence of state action.

Further, the plaintiffs might (but did not) argue that the presence of Officer Don Ennis and his actions during the final altercation between the Jenners and Shepherds provide the significant degree of state involvement necessary to establish state ac-

**5.** The plaintiffs have cited numerous decisions to the Court which have, under various factual situations, held state innkeeper lien laws to be unconstitutional under the Fourteenth Amendment. *See, e.g., Hall v. Garson*, 468 F.2d 845 (5th Cir.1972); *Adams v. Joseph F. Sanson Investment Co.*, 376 F.Supp. 61 (D.Nev.1974); *Klim v. Jones*, 315 F.Supp. 109 (N.D.Cal.1970). The Court will not attempt to distinguish each of the cases cited by the plaintiffs but rather notes that neither the plaintiffs nor the defendants have cited either *Anastasia v. Cosmopolitan National Bank*, 527 F.2d 150 (7th Cir.1975) or

*Davis v. Richmond*, 512 F.2d 201 (1st Cir.1975) both of which held that no state action existed where innkeepers had detained the personal property of their guests pursuant to a state statutory lien law. As the Seventh Circuit noted in *Anastasia*, 527 F.2d at 157 n. 17, this issue is one on which there is a conflict among the circuits; however, this Court agrees with the reasoning of the Seventh Circuit in *Anastasia* and follows the precedent established in this Circuit. The plaintiffs have not persuaded the Court that a contrary rule should be established.

tion. The presence of Officer Ennis is simply insufficient under the circumstances of this case to find that state action exists. Mrs. Shepherd testified at trial that she enlisted the assistance of Officer Ennis solely because of the threats of violence made by the Jenners. During the short two-month residency of the Jenners, the police had been called to the Shepherds mobile home park on a number of occasions because of the Jenners' disorderly conduct. The Court accepts Mrs. Shepherd's testimony on this point as credible and believes that it was entirely reasonable for Mrs. Shepherd to seek protection from the Charlestown police.[6]

The public function theory of state action recognizes that when the state confers powers or functions traditionally reserved to the state on private individuals, the actions of the private individuals may be subject to constitutional limitations. *See, Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1945). The Seventh Circuit rejected *Hall v. Garson,* 468 F.2d 845 (5th Cir.1972) which found state action to exist under this theory because the landlord was performing what was ordinarily a state function. The Seventh Circuit determined that while a sheriff is often the party to execute a lien, it is hardly a function traditionally and exclusively exercised by the state, but rather one that has been shared by the state and private persons. *Anastasia,* 527 F.2d at 158. This Court agrees with the Seventh Circuit and finds that there is no basis for concluding that there is state action under the public function theory.

Because the Court holds that there is no state action, the Court does not consider whether the Indiana innkeepers lien, Ind. Code 32–8–27–2, as applied to mobile homes, Ind.Code 13–1–7–33 would be unconstitutional under the Fourteenth Amendment if state action had been present.

**b. *The Fourth, Fifth and Seventh Claims***

The plaintiffs' fourth claim is based upon the Indiana innkeepers lien, Ind.Code 32–8–27–2, as applied to mobile homes by Ind.Code 13–1–7–33 and alleges that the defendants deprived the plaintiffs of rights secured by Article I, Section 12 of the Indiana Constitution. The constitutionality of these statutes under the Indiana Constitution raises a question more properly decided in the first instance by the Indiana state courts and this Court respectfully abstains from consideration of this question.

As their fifth claim for relief the plaintiffs state that the defendants used the innkeepers lien, Ind.Code 32–8–27–2, as applied to mobile homes by Ind.Code 13–1–7–33 to "evict Plaintiffs and said use was improper use of the Statute as it deprives tenants of their rights to their leasehold without due process of law." Pl. Complaint at 9. This claim is based on the defendants' improper use of the Indiana innkeepers lien law to effect an eviction of the plaintiffs in contravention of state landlord tenant law. The plaintiffs' allegations state that the defendants were acting contrary to the state statute; the conduct of which the plaintiffs complain was in fact contrary to State policy or law. That the defendants, private citizens, invoked the statute and used it to effect a result not allowable by the statute itself can in no way be attributed to a state decision or a state rule. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 940, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982). The plaintiffs' fifth claim does not present an action under section 1983 but rather challenges only the private action of the Shepherds under Indiana law.

The plaintiffs' seventh claim alleges that the defendants committed the torts of conversion and trespass by the wrongful detention of the plaintiffs' property. The questions of whether the Shepherds acted wrongfully in evicting the plaintiffs or com-

---

**6.** The Court stresses again that whether the actions of Officer Ennis and the Town of Charlestown constitute state action for the purposes of

the 14th Amendment is not before this Court because the plaintiffs have dismissed these governmental defendants from this action.

mitted the torts of conversion or trespass cannot be resolved without a determination of whether the statutes in question violate the Indiana Constitution. The consideration of the state tort claims in relation to the constitutionality of the Indiana innkeepers lien, Ind.Code 32–8–27–2, as applied to mobile homes by Ind.Code 13–1–7–33 under the Indiana Constitution is more properly made by the Indiana state courts and the plaintiffs must seek redress through the state judicial system. Similarly, the defendants' counterclaim for rent and damages must be considered in light of the constitutionality of the state statutes under the Indiana Constitution and the defendants must also look to the state courts for their remedy.

The Court's order to the parties in this action to repair to the state courts to seek redress for the state claims raised by them protects an important state interest. The very existence of the claims raised is directly determined by whether the Indiana innkeepers lien law, Ind.Code 32–8–27–2 as applied to mobile homes, Ind.Code 13–1–7–33, violates Article I, Section 12 of the Indiana Constitution. The State of Indiana has an interest in the interpretation and proper construction of its innkeeper lien and its application to mobile homes. The interests of comity and federalism require this Court to abstain from considering these questions. The Court further finds that the parties will not be unduly prejudiced by the Court's abstention in this matter as both parties devoted their energy to the federal constitutional and civil rights claims before this Court while providing little argument or authority as to the advancement of the state law claims. The state law causes of action contained in the fourth, fifth and seventh claims of the plaintiffs' complaint and the defendants' counterclaim are therefore dismissed without prejudice.

IT IS SO ORDERED.

### JUDGMENT

This cause came before the Court for trial on April 13, 1987. The Court, having filed its Memorandum Decision and Order dismissing the fourth, fifth and seventh claims of the plaintiffs' complaint without prejudice herein, and being duly advised in the premises, hereby ENTERS JUDGMENT in favor of the defendants Eva Shepherd, Lawrence Shepherd and Steven Shepherd and against the plaintiffs Otis and Arlene Jenner on the first, second, third and sixth claims of the plaintiffs' complaint.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the plaintiffs take nothing by way of the first, second, third, and sixth claims of the plaintiffs' complaint, that JUDGMENT BE ENTERED herein in favor of the defendants on the first, second, third and sixth claims of the plaintiffs' complaint and that costs be borne accordingly.